UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
─────────────────────────────────────────────

DAVID WALTON,

          Plaintiff,

      v.                                      Case No. 24-cv-1171-bhl

CHRISTOPHER STEVENS, et al.,

          Defendants.
─────────────────────────────────────────────

## SCREENING ORDER
─────────────────────────────────────────────

Plaintiff David Walton, who is currently serving a state prison sentence at the Green Bay Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Walton's motion for leave to proceed without prepayment of the filing fee and to screen the complaint.

### MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE

Walton has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Walton has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $12.03. The Court will grant Walton's motion for leave to proceed without prepaying the filing fee.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint

or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

ALLEGATIONS OF THE COMPLAINT

Walton is an inmate at the Green Bay Correctional Institution. Dkt. No. 1. Defendants are Warden Christopher Stevens, Captain (Capt.) Baumann, Capt. Cushing, Capt. Cole, Lieutenant

(Lt.) Matushak, Correctional Officer (CO) Prebeg, Sergeant (Sgt.) Hauffman, Psychological Services Unit (PSU) Supervisor Hamilton, and Education Director Richards. *Id*. at 1-2.

In March 2022, a staff member (not a defendant) falsely accused Walton of assault and taking hostages. *Id*. at 3 & 4. About a month later, on April 18, 2022, Capt. Cushing made the recommendation to place Walton on Administrative Confinement based on those "lies and false information." *Id*. at 3. Capt. Baumann accepted the recommendation and placed Walton on Administrative Confinement. *Id*. at 3. According to Walton, both Capt. Cushing and Capt. Baumann knew that the allegations were false, but placed him in Administrative Confinement anyway. *Id*.

Walton's placement in Administrative Confinement was reviewed every six months. *Id*. at 4. Each time, Capt. Cushing and Lt. Matushak recommended that he remain on Administrative Confinement. *Id*. The Review Committee, comprised of Capt. Cole, CO Prebeg, Sgt. Hauffman, Education Director Richards, and PSU Supervisor Hamilton, accepted the recommendation and kept him in Administrative Confinement. *Id*. Warden Stevens also reviewed the Committee's decision on or around August 11, 2023 and decided to keep him on Administrative Confinement. *Id*. During this time, Walton was also criminally charged in Wisconsin state court in connection with the allegations made by the staff member. *Id*.

In July 2024, the staff member finally admitted that she lied about the assault. *Id*. Walton believes this information came to light because discovery, specifically pictures exchanged through the criminal case, showed that the staff member had "zero injuries" from around the time of the alleged assault. *Id*. All criminal charges were then dropped and Walton was finally released from Administrative Confinement after 28 months. *Id*. Walton states that he experienced extreme mental anguish, anxiety, and self-destructive behavior—including suicide attempts—during his 28 months of Administrative Confinement. *Id*. at 4-5. He states that he experienced prolonged isolation in Administrative Confinement and he can no longer communicate or interact with others

3

normally; and he suffers from depression and extreme discomfort.  *Id*. at 5.  Walton says he was "locked in a cell 24/7 for 28 months with the exception of recreation for 2 hours a week."  *Id*.  Walton states, "all staff members were fully aware that the assault never took place."  *Id*.  For relief, Walton seeks monetary damages.  *Id*. at 6.

### THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law."  *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

To state a Fourteenth Amendment due process claim, Walton must allege that: (1) he was deprived of a constitutionally protected liberty interest; and (2) the procedures he was afforded were constitutionally deficient.  *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024).  Disciplinary confinement deprives an inmate of his liberty interest when it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id*. at 964-65 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  The Court looks at the "combined import" of the duration of the confinement and the conditions endured.  *Id*. (citing *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013)).

Once a liberty interest has been invoked, the Court looks to what process was due.  *Id*. at 965-66.  An inmate who is facing transfer to disciplinary confinement is only entitled to "informal, nonadversarial due process," which leaves substantial discretion and flexibility in the hands of the prison administrators.  *Id.* (citing *Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024)).  Informal due process requires only that an inmate be provided (1) "notice of the reasons for the inmate's placement" in confinement and (2) "an opportunity to present his views," for instance, in a written statement or at a hearing.  *Id.*  "[T]he Supreme Court has made clear that '[o]rdinarily a written

4

statement by the inmate will accomplish this purpose…So long as this occurs, and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied.'" *Id.* (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)).

Walton alleges that he spent 28 months in Administrative Confinement in near isolation with no contact with others. This allegation is sufficient to trigger a protected liberty interest, satisfying the first portion of a Fourteenth Amendment due process claim.

Walton's claim fails at the next step, however, because he does not allege enough details about the "process" he was provided prior to being placed in Administrative Confinement. He does not allege if, when, and how he received notice of the reasons for his placement in Administrative Confinement. He also fails to allege whether he received an opportunity to present his views, including the opportunity to provide a written statement prior to his placement. It is also unclear whether the decisionmaker reviewed the charges and the then-available evidence against him. Walton alleges that everyone involved in the case knew that the allegations were false from the beginning, but he does not allege plausible facts suggesting how the defendants would have known this or how he might know what defendants knew.

Walton also affirmatively admits that he received a "review" of his placement every six months. This constitutes some form of process and, given the facts alleged, the Court cannot reasonably infer that Walton did not receive at least informal due process prior to his placement in Administrative Confinement. Again, Walton's conclusory allegation that the charges were "lies and false information" and his assertion that defendants knew the charges were false, do not, on their own, mean that he was denied informal due process prior to his placement in Administrative Confinement for 28 months. Accordingly, the Court will dismiss Walton's initial complaint for failure to state a claim.

The dismissal is not final, however. As a general matter, *pro se* plaintiffs are allowed at least one chance to amend an inadequately pleaded complaint. *See Boyd v. Bellin*, 835 F. App'x

5

886, 889 (7th Cir. 2021). The Court will therefore give Walton an opportunity to file an amended complaint to cure the deficiencies described above. The Court will enclose a guide for *pro se* prisoners that explains how to file an amended complaint that the Court can effectively screen. The Court also will include a blank prisoner amended complaint form. The Court will require Walton to use that form to file his amended complaint. *See* Civ. L. R. 9 (E.D. Wis.). Walton is advised that the amended complaint must bear the docket number assigned to this case. The amended complaint replaces the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998). In *Duda*, the appellate court emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* at 1057 (citation omitted). If Walton files an amended complaint, the Court will screen it as required by 28 U.S.C. §1915A. If Walton does not file an amended complaint, the Court will likely dismiss this case.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Walton's motion for leave to proceed without prepayment of the filing fee (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that the original complaint is **DISMISSED** because it fails to state a claim. Walton may file an amended complaint that complies with the instructions in this order **within 30 days of this order**. If Walton files an amended complaint by the deadline, the Court will screen it as required by 28 U.S.C. §1915A. If Walton does not file an amended complaint by the deadline, the Court will likely dismiss this case.

**IT IS FURTHER ORDERED** that the Clerk's Office mail Walton a blank prisoner amended complaint form and a copy of the guide entitled "Guide to Filing Prisoner Complaints Without a Lawyer in the United States District Court for the Eastern District of Wisconsin," along with this order.

**IT IS FURTHER ORDERED** that the agency having custody of Walton shall collect from his institution trust account the **$337.97** balance of the filing fee by collecting monthly payments from Walton's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Walton is transferred to another institution, the transferring institution shall forward a copy of this Order along with Walton's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Walton is located.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Walton is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of

Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin on December 12, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge